No. 36,046

A. F. Deruy, *Appellee*, v. Blanche G. Hurt, as Executrix of the Will of Virgil E. Hurt, Deceased; Atherton F. Messmore, *Defendants*, and The Royal Indemnity Company, *Appellant*.

No. 36,052

John A. Robinson, *Appellee*, v. Blanche G. Hurt, as Executrix of the Will of Virgil E. Hurt, Deceased; Atherton F. Messmore, *Defendants*, and Royal Indemnity Company, *Appellant*.

(146 P. 2d 363)

Opinion filed March 4, 1944.

*Roscoe W. Graves,* of Emporia, argued the cause for the appellant.

*Don H. Elleman,* of Columbus, and *C. A. Burnett,* of Pittsburg, argued the cause, and *Al F. Williams,* of Columbus, and *A. B. Keller,* of Pittsburg, were on the briefs for the appellees.

The opinion of the court was delivered by

Dawson, C. J.: These appeals present for review a ruling of the trial court on defendant's demurrers to plaintiffs' separate petitions on the ground of misjoinder of causes of action.

The actions were to recover moneys paid by plaintiffs for speculative stocks which were never delivered. Plaintiffs based their respective rights of recovery on a specific provision of the blue-sky law. (G. S. 1935, art. 17, and later amendments, G. S. 1941 Supp. 17-1223 *et seq.*)

In the Deruy petition (case No. 36,046) four causes of action were pleaded. It was alleged that the late Virgil E. Hurt, of Emporia, was a licensed broker in speculative securities, doing business as Virgil E. Hurt and Company. He had brokerage offices in Emporia, Pittsburg and elsewhere. One Atherton F. Messmore was the agent in charge of Hurt's brokerage office in Pittsburg. In 1937 Hurt had received from the corporation commission his license to sell specu-

lative securities pursuant to registration as a broker and on his giving the faithful-performance bond required by the statute. Messmore was duly registered as an agent of Hurt and he continued in that capacity until April 8, 1940.

Following the issuance of his license Hurt sold plaintiff Deruy four separate batches of speculative securities, viz.:

(1) 60 shares of Eastern Corporation stock, for $345 cash;

(2) 200 shares of National Paper & Type Co. for $900 cash;

(3) 100 shares of National Paper & Type Co. for $437.50 cash;

(4) 110 shares of National Paper & Type Co. for $440 cash.

Hurt likewise sold plaintiff Robinson (case No. 36,052) a similar batch of securities, viz.:

(1) 200 shares of National Paper & Type Co. for $800 cash.

All these sales were made at Hurt's Pittsburg office, which was in Messmore's charge. None of these stocks was delivered to plaintiffs, and they never received anything therefor,—except that some time after these sales were made a draft of a Kansas City bank for $219.83 drawn on a Chicago bank, dated July 22, 1940, payable to A. F. Messmore and A. F. Deruy and endorsed by Messmore, was mailed by an attorney for Messmore to A. B. Keller, of Pittsburg, one of the attorneys for Deruy in this action, No. 36,046.

On the same date a similar draft for $108 in favor of Messmore and John Robinson and endorsed by Messmore was received by Robinson through the United States mails.

Hurt's license as a broker was canceled on July 10, 1940, and he died April 3, 1941. His widow qualified as executrix; and these actions, *Deruy,* No. 36,046, and *Robinson,* No. 36,052, were begun on July 7, 1941.

The demurrers lodged by the defendant Royal Indemnity Company, surety on Hurt's bond, were predicated on what it assumed was a material inconsistency in each of the causes of action alleged,—that they sounded partly in rescission and partly in tort for damages, which would imply acceptance and ratification.

In the lengthy narrative of facts pleaded in plaintiffs' petition, it was alleged that by the failure of Hurt to deliver the purchased stocks plaintiffs were *damaged* in the exact amounts of money they had paid for those stocks, but the actions first and last were predicated on the statute, the pertinent provisions of which, in part, read:

"Every sale or contract for sale made in violation of any of the provisions of this act shall be voidable at the election of the purchaser; and the person

making such sale or contract for sale and every director, officer or agent of or for such seller who shall have participated or aided in any way in making such sale shall be jointly and severally liable to such purchaser in an action at law in any court of competent jurisdiction upon tender to the seller in person or in open court of the securities sold or of the contract made, and of any income from such securities or contract for the full amount paid by such purchaser, together with all taxable court costs and reasonable attorney's fee in any action or tender under this section: *Provided,* That no action shall be brought for the recovery of the purchase price after three years from the date of such sale or contract for sale. . . ." (G. S. 1941 Supp. 17-1240.)

"Before. registering any such broker the corporation commission shall require such broker to enter into and file in the office of the corporation commission a bond in the sum of five thousand dollars ($5,000) running to the state of Kansas, insuring the faithful compliance with the provisions of this act by said broker and his salesmen, such bond to be executed as surety by a surety company authorized to do business in this state. Such bond may be so drawn as to cover the original registration and any renewal thereof. . . . Any person having a right of action against a broker or salesman for making a sale in violation of this act shall have a right of action under the bond or deposit provided for herein: . . ." (G. S. 1941 Supp. 17-1230.)

It will thus be seen that while statutory redress for a victim of a blue-sky swindle savors somewhat of a common law action in rescission for breach of contract, the statute fairly indicates what are the required pleadings to state a cause of action against the broker and his bondsman. The fact that in each plaintiff's narrative of the facts he alleged that the money he was out-of-pocket for the stocks he had bought and which were never delivered *damaged* him to the extent of the exact sum he had so paid did not pervert his statutory action into a common-law action for damages. The petition of each plaintiff conformed strictly with the provisions of the statute; they tendered back the drafts for the inadequate sums mailed to them or to their counsel; they tendered back whatever papers they had received from the broker or his agent. We discern no semblance of misjoinder of causes of action, and the overruling of defendant's demurrers was correct.

The judgments in both cases are affirmed.